ORDERED in the Southern District of Florida on 2 October 2009



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| **FLORIDA YACHT CHARTERS AND SALES, INC.** | ) | Case No. 09-25920-AJC |
| | ) | |
| Debtor | ) | Chapter 11 |

## MEMORANDUM OPINION GRANTING TEXTRON FINANCIAL CORPORATION'S AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC STAY

THIS MATTER came before the Court on September 24, 2009 at 3:30 p.m. upon the evidentiary hearing on Textron Financial Corporation's ("Textron") Amended Motion for Relief from the Automatic Stay (CP# 9) ("Amended Motion") to permit it to take possession of certain boat inventory which serve as collateral for the Debtor's indebtedness due to Textron.[1] For all of the reasons set forth below, this Court grants Textron's Amended Motion in all respects.

In support of the Amended Motion for Relief from the Automatic Stay, the Court accepted into evidence all of Textron's exhibits as well as the uncontested facts contained in the

---

[1] The Court previously entered a Consent Order Authorizing the Modification of the Automatic Stay with respect to Textron. In said Order, this Court authorized and directed the Debtor to immediately surrender to Textron those three Hunter branded boats for which Textron has provided purchase money financing, and which are currently in the possession of the Debtor. As a result, this Court ordered that Textron was authorized to liquidate said boats in conformity with the provisions of Chapter 679 of the Florida Statutes. This Memorandum Opinion concerns whether Textron is entitled to relief from the automatic stay to obtain possession of and liquidate those three Carver branded boats for which Textron has provided purchase money financing, and which are currently in the possession of the Debtor.

Pre-Trial Order; and, in opposition to said Amended Motion, the Court accepted into evidence all of the exhibits submitted by the Debtor. Additionally, the Court considered the live testimony of Richard F. Learned, NAMS-CMS, ASA (expert witness) in support of Textron's Amended Motion, and Charles E. Kanter, AMS (expert witness) and David Sell, President of Debtor, in opposition to Textron's Amended Motion.

Through the Amended Motion, Textron seeks an order of the Court directing the Debtor to immediately turnover three Carver branded boats for which Textron has provided purchase money financing, and which are currently in the possession of the Debtor. Textron maintains that pursuant to Section 362(d) of the Bankruptcy Code, sufficient cause exists for this Court to grant relief from the automatic stay. Given the competing testimony of both parties' expert witnesses, Textron submits there is no equity in the Financed Inventory[2] for the benefit of the Debtor's estate. Additionally, Textron maintains that the boats are not necessary for the Debtor to have an effective reorganization because, among other facts, to date, after more than one year of offering the three boats for sale, the Debtor's dealership has not sold any of the three Carver branded boats. Lastly, Textron asserts that the Debtor has not offered any adequate protection to Textron, and it is unlikely that sufficient adequate protection can be offered. As a result, Textron maintains that its interest in the Financed Inventory will not be adequately protected if the automatic stay is allowed to remain in effect.

The matters and issues to be determined by the Court concern Section 362(d) of the Bankruptcy Code. Specifically, the issues that this Court is to determine are (a) whether there is any equity in the three Carver branded boats when compared to the total amount due and owing to Textron on account of its purchase money security interest; and (b) to the extent there is equity

---

[2] Capitalized terms herein shall have the same meaning as set forth in Textron's Amended Motion.

{219502.0003/N0788261_1}

in the three Carver branded boats, whether, and to what extent, Textron is entitled to adequate protection of its perfected security interest in the Dealership Collateral.

The Court has considered the arguments of counsel; the testimony of the witnesses and the documents admitted into evidence; and has reviewed the applicable sections of the Bankruptcy Code controlling the issues presented in this contested matter. Based upon the evidence and the controlling law, this Court makes the following findings of fact and conclusions of law.

### **FINDINGS OF FACT**

The following facts were admitted by the Debtor, as stated in Textron's unilaterally submitted Pre-Trial Order and required no proof:[3]

1. On July 31, 2009 (the "Filing Date"), the Debtor filed a Voluntary Petition with this Court under Chapter 11 of Title 11 of the United States Bankruptcy Code. In this connection, the Debtor continues to possess and control its assets and is authorized to manage its financial affairs and property.

2. On January 11, 2006, the Debtor executed a "Wholesale Security Agreement," as well as a Finance Plan with Textron (collectively the "WSA"). Under the WSA, Textron agreed to extend new boat wholesale financing to the Debtor so that the Debtor could purchase boat inventory for sale at its dealership. According to the WSA, the Debtor granted Textron a security interest in all of the Debtor's inventory and assets, (the "Dealership Collateral"), which Textron properly perfected its interest in by filing a UCC-1 financing statement in Florida, and which assets continue to secure the amounts owed under the

---

[3] Textron had to unilaterally submit a Pre-Trial Order because Debtor never commented on or otherwise submitted any proposed changes to a Joint Pre-Trial Order that was previously submitted to counsel for the Debtor.

{219502.0003/N0788261_1}

WSA. There was no evidence presented of any competing security interests in the boat inventory collateral.

3. To date, Debtor failed to make payments pursuant to the WSA. Based on the WSA, the Debtor was and is obligated to pay interest on the outstanding obligations due to Textron and is also required to pay certain curtailments and maturities when financed inventory is not sold by a specific date.

4. As of the Filing Date, the Debtor owed Textron $9,311.80 for unpaid interest and $771,654.00, representing principal past due for maturities. The aggregate balance past due and owing as of the Filing Date was $780,965.80, which amount represents $9,311.80 in unpaid interest payments and $771,654.00 in unpaid principal.

5. The Debtor has sold only one of the boats financed by Textron in the last thirteen months.[4] The Debtor owes Textron the total principal sum of $2,635,485.12 for six boats. After this Court granted the relief with respect to the three Hunter branded boats, the total amount the Debtor owes Textron with respect to the three Carver branded boats is $1,875,386.87, which amount represents $1,863,831.12 in unpaid principal and $11,555.75 in unpaid interest. The evidence discloses that the principal balance due on the 44 Sojourn is $444,871, the principal balance due on the 47 Motor Yacht is $482,727 and the principal balance due on the 56 Voyager is $936,231.

After this Court reviewed all of the parties' respective exhibits and weighed the competing testimony in support of their positions, the Court finds the expert opinion, testimony and report of Richard F. Learned, NAMS-CMS, ASA to be more credible than that of Charles E.

---

[4] However, this boat was not a Carver branded boat. The only boats that are the subject of this Memorandum Opinion are the three Carver branded boats referenced above.

4

{219502.0003/N0788261_1}

Kanter, AMS. In this connection, this Court finds the following with respect to the three Carver branded boats:

### Model: 2009 Carver 44 Sojourn

|                  | Gross Value Range | Costs Incurred In Sale | Net Value Range |
|------------------|-------------------|------------------------|-----------------|
| Forced Sale      | $355,000          | (15%)                  | $301,175        |
| Fair Market Sale | $355,000          | (10%)                  | $319,500        |

### 2009 Carver 56 Voyager

|                  | Gross Value Range | Costs Incurred In Sale | Net Value Range |
|------------------|-------------------|------------------------|-----------------|
| Forced Sale      | $750,000          | (15%)                  | $637,500        |
| Fair Market Sale | $750,000          | (10%)                  | $675,000        |

### Carver 47 Motor Yacht

|                  | Gross Value Range | Costs Incurred In Sale | Net Value Range |
|------------------|-------------------|------------------------|-----------------|
| Forced Sale      | $386,300          | (15%)                  | $328,400        |
| Fair Market Sale | $386,300          | (10%)                  | $357,700        |

### CONCLUSIONS OF LAW

Based upon the factual findings of this Court and the prepondence of the evidence, this Court makes the following conclusions of law. Given that Textron seeks to obtain possession of and liquidate the three Carver branded boats, the forced sale value is the more appropriate value to utilize, although the ultimate finding of no equity will be the same under either method. There is no indication that the debtor will be able to sell these boats in the normal course of business,

5

{219502.0003/N0788261_1}

and, therefore, the fair market sale approach overvalues the boats. As such, for illustrative purposes, if this Court were to accept the net value for all three of the Carver branded boats, their total aggregate worth would be $1,267,375. This amount is less than the $1,875,386.87 that the Debtor currently owes with respect to these.[5] Consequently, the Debtor has no equity in the three Carver branded boats.

The boats are not necessary for the Debtor to have an effective reorganization because to date, the Debtor's dealership has not sold any of the three Carver branded boats and there is no substantial likelihood that such a sale will occur. Since there is no equity in the three Carver branded boats, this Court need not consider whether Textron is entitled to any adequate protection. However, this Court acknowledges that that the Debtor has not offered any adequate protection to Textron.

For these reasons, it is

**ORDERED AND ADJUDGED** that Textron Financial Corporation's Amended Motion for Relief from the Automatic Stay is GRANTED and Textron is authorized and entitled to *in rem* relief from the automatic stay so that it may obtain immediate possession of the three Carver branded boats that are subject to its perfected security interest. The relief granted herein is *in rem* relief only, and should Textron seek any monetary relief from the Debtor, said relief may only be obtained following an appropriate motion and order of the Court.

###

**Copies to:**
Charles M. Tatelbaum, Esq.
James A. Poe, Esq.

---

[5] Even using the fair market value as stated by Textron's expert, the total value of the three Carver branded boats would only be $1,352,200.